IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA S. MOORE, as Independent Executor of the Estate of Kathleen S. Williams, deceased, | )<br>)<br>) |
| Plaintiff, | ) Case No. 19 C 2951 |
| v. | )<br>)<br>) Judge Robert W. Gettleman |
| ALASKA AIRLINES, INC., ALASKA AIR GROUP, and JOHN DOE, an Alaska Airlines, Inc. agent, | )<br>)<br>)<br>) |
| Defendants. | ) |

## AMENDED MEMORANDUM OPINION AND ORDER

Plaintiff Linda S. Moore, as independent executor of the Estate of Kathleen S. Williams, deceased ("Williams"), has brought a one count complaint against defendants Alaska Airlines, Inc. ("Alaska Airlines"), and Alaska Air Group, Inc. ("Alaska Group") (jointly as "Alaska Air"), and John Doe, an Alaska Airlines' agent[1], for negligently causing Williams to fall out of her wheelchair at the Milwaukee Mitchell Airport ("Milwaukee"), which led to her death eight days later. Alaska Air has moved to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). For the reasons stated below, the motion is granted.

## BACKGROUND

On May 2, 2018, Williams boarded Alaska Airlines Flight 1232 ("AS 1232") in Los Angeles scheduled to fly into O'Hare International Airport in Chicago ("O'Hare"). Williams – who was 75 years old – was returning to her residence in Aurora, Illinois, after being released

---

[1] Based on the record before the court, John Doe has not been identified or served with process. The specific jurisdictional issues described herein apply equally to John Doe.

with the approval of her doctors from treatment in California. She intended to continue treatment with her internist in Aurora after arriving in Chicago. When purchasing her ticket online, Williams arranged with Alaska Airlines to provide the highest level of care, including wheelchair services for boarding and deplaning Williams.

During the flight on May 2, 2018, AS 1232 was diverted to Milwaukee because of bad weather. Williams was talking, laughing, and fully communicating with her travel companions during the flight. Additionally, Williams was alert, feeding herself, able to adjust herself, and had control of her hands, arms, legs, and feet. Upon arrival in Milwaukee, an agent of Alaska Airlines, John Doe, came aboard the aircraft and, at the direction of Alaska Airlines, placed Williams in an aisle wheelchair to take her off the aircraft. At the junction between the aircraft doorway and the jetway, John Doe unbuckled Williams from the aisle chair. After unbuckling her, John Doe allegedly "carelessly and negligently shoved or jerked the aisle wheelchair and caused [Williams] to fall from the aisle wheelchair." Williams hit her head on a metal portion of the jetway or aircraft, landing in the jetway.

Immediately after falling on the left side of her head, Williams began to bleed profusely from her head, became non-responsive, and could not focus her eyes. She was transported from the airport to Froedtert hospital in Milwaukee. During her stay at the hospital, physicians diagnosed her with acute encephalopathy, head trauma, cerebral edema, metastatic chondrosarcoma, and a concussion. Additionally, physicians noted Williams had athetoid movements of her limbs. On May 4, 2018, two days after the fall, Williams, was discharged from Froedtert Hospital and was driven by ambulance to her home in Aurora, Illinois. At the time of her discharge, Williams had garbled speech, was not able to fully communicate, could

not feed herself, could not control her body movements, and was bedridden because of her head injury. Between May 4, 2018, and May 10, 2018, Williams's condition did not improve. On May 10, 2018, Williams died in her home in Aurora, Illinois.

## DISCUSSION

Alaska Air argues that plaintiff has failed to allege facts that establish a prima facie case for personal jurisdiction over them. "Whether a forum's courts can bind defendants to their judgments depends on principles of due process." Murray v. Cirrus Design Corp., 339 F. Supp. 3d 783, 786 (N.D. Ill. 2018). "Those principles require that defendants 'have certain minimum contacts with [the forum] such that . . . the suit does not offend traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 66 S. Ct. 154, 158 (1945). When defendants have those minimum contacts, the forum's courts have personal jurisdiction. Id.

Although a defendant's physical presence in the forum State is not required, there must exist sufficient minimum contacts such that the defendant "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 105 S. Ct. 2174, 2183 (1985) quoting World-Wide Volkswagen Corp., 100 S. Ct. 559, 567 (1980). The exercise of personal jurisdiction by a federal court sitting in diversity turns on the law of the forum state. Kipp v. Ski Enterprise Corp., 783 F.3d 695, 697 (7th Cir. 2015). Illinois's long-arm statute allows personal jurisdiction on any basis allowed by the United States Constitution, so "there is no operative difference between [the] two constitutional limits." Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A., 623 F.3d 440, 443 (7th Cir. 2010) (citing 735 ILCS 5/2-209(c)). The question thus merges into "whether the exercise of personal jurisdiction

3

would violate federal due process." Id. Under federal due process principles, personal jurisdiction comes in two types: general and specific. Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2855 (2011). Plaintiff has the burden to show personal jurisdiction, but because there has been no evidentiary hearing, plaintiff's showing need only be prima facie. Northern Grain Marketing., LLC v. Greving, 743 F.3d 487, 491-92 (7th Cir. 2014).

Alaska Air argues that plaintiff has failed to establish general jurisdiction. Plaintiff counters that general jurisdiction exists because Alaska Air is "at home" in Illinois because of Alaska Air's daily, continuous, and substantial billion-dollar business activities in Illinois. "The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct. 2846, 2854 (2011); Daimler AG v. Bauman, 134 S.Ct. 746, 760 (2014). In Daimler AG, the Supreme Court rejected the argument that general jurisdiction exists in any state in which a corporation "engages in a substantial, continuous, and systematic course of business." Daimler AG, 134 S.Ct. at 761. The Court instead held that general jurisdiction exists only where the defendant is "fairly regarded at home," and for a corporation, "the place of incorporation and the principal place of business are paradigm bases for general jurisdiction." Id. at 760. "Those affiliations have the virtue of being unique - this is, each ordinarily indicates one place – as well as easily ascertainable." Id. Although the Court recognized there may be a rare situation where a corporation is subject to general jurisdiction in a state other than the state of its incorporation or principal place of business, it stated that it would have to be an "exceptional case." Id. at 761 n. 19.

The correct inquiry for general jurisdiction "is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic, it is whether that corporation's affiliations with the State are so continuous and systematic as to render [it] essentially 'at home' in the forum State." Id. at 761. In rejecting the notion that a corporation is subject to general jurisdiction "in every State in which a corporation engages in a substantial, continuous, and systematic course of business," the Court held that such a standard would be "unacceptably grasping," because "[a] corporation that operates in many places can scarcely be deemed at home in all of them. Id. at 761,762 n. 20. Thus, the standard for general jurisdiction is a high one.

In the instant case, Illinois is neither the state of incorporation nor the principal place of business of Alaska Air. Specifically, Alaska Group is a Delaware corporation and has its principal place of business in Seattle, Washington. Alaska Airlines is an Alaskan corporation and also has its principal place of business in Seattle, Washington. As Daimler AG makes clear, because Illinois is neither the place of incorporation nor the principal place of business of Alaska Air, general jurisdiction over Alaska Air would require this to be an exceptional case. Plaintiff presents no unique facts before this court that support such an exceptional conclusion. Rather, Alaska Air's limited business activities in Illinois actually support the opposite conclusion: that Alaska Air is not "at home" in Illinois. Just because plaintiff alleges that Alaska Airlines operates many, if not hundreds, of flights to and from O'Hare, advertises in Chicago, and maintains offices at O'Hare, this does rise to Alaska Air being "at home" in Illinois.

Alaska Airlines cannot be deemed "at home" in every state that in which it operates, especially because Alaska Airlines also provides air services to more than 100 destinations

5

world-wide, and more than ninety-seven percent of Alaska Airlines' scheduled air services occur outside of Illinois. Further, more than ninety-seven percent of Alaska Airlines' revenue is generated outside of Illinois, more than ninety nine percent of Alaska Airlines' employees work outside of Illinois, and more than ninety-seven percent of Alaska Airlines' advertising occurs outside of Illinois.[2] Contrary to plaintiff's position, the same allegations regarding Alaska Air's activities in Illinois would apply to any other state where Alaska Air provides air services. Consequently, Alaska is not "at home" in Illinois.

Plaintiff next argues that even if Alaska Air is not subject to general personal jurisdiction in Illinois, they are subject to specific personal jurisdiction. Plaintiff's complaint alleges that specific jurisdiction exists over Alaska Air because Williams' injury was related to Alaska Airs' extensive Illinois business activities. Additionally, plaintiff's complaint alleges that Williams would have never been on the Alaska Airlines' plane had Alaska Airlines not arranged flights into Illinois, not allowed for the purchase of online tickets, and not paid the City of Chicago for the right to operate out of O'Hare. In particular, plaintiffs argue specific jurisdiction is established because it is foreseeable that Williams could have fallen at O'Hare had the flight not been diverted to Milwaukee.

Alaska Air counters that plaintiff does not offer the necessary facts to establish "suit-related conduct" to create specific jurisdiction in Illinois just because Alaska Airlines operates many, if not hundreds, of flights to and from Illinois. Moreover, Alaska Air

---

[2] Defendants also assert that Alaska Air does not own any real property, or operate any hubs or maintenance facilities in Illinois.

asserts that where the aircraft was scheduled to land (whether it was Wisconsin, Illinois, or any other state) is not relevant to the specific jurisdiction analysis.

Compared to general jurisdiction, specific jurisdiction is "very different" – it requires that "the suit…aris[e] out of or relat[e] to the defendant's contacts with the forum." Murray, 339 F. Supp. 3d at 787; Bristol-Myers Squibb Co. v. Superior Court, 137 S.Ct.1773, 1780 (2017). Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation" and requires that "the defendant's suit-related conduct…create a substantial connection with the forum State." Walden, 134 S.Ct. at 1121. For the purposes of specific jurisdiction, a defendant's general connections with the forum are not enough." Murray, 339 F. Supp. 3d at 788 (quoting Bristol-Myers Squibb Co., 137 S.Ct. at 1781). The key question is "where defendants' 'suit-related conduct' took place." Id. (citing Walden, 134 S.Ct. at 1115).

Following Walden, the Seventh Circuit addressed specific jurisdiction in Brook v. McCormley, 873 F. 3d 549, 552-53 (7th Cir. 2017):

> Specific jurisdiction requires a defendant's contacts with the forum State to be directly related to the conduct pertaining to the claims asserted. The mere fact that a defendant's conduct affects a plaintiff with connections to the forum State is not sufficient to establish jurisdiction. The inquiry must focus on the relationship among the defendant, the forum, and the litigation. The defendant's relationship with the plaintiff is not sufficient to create the necessary minimum contacts. Rather, the relationship must arise out of contacts that the defendant himself creates with the forum State, and the defendant's contacts with the forum State itself.

In the instant case, the facts concerning Williams' injury are clear and not in dispute. Williams' injury occurred in Milwaukee. The Alaska Airlines' employee, John Doe, who assisted Williams in Milwaukee, was based in Milwaukee, and the decisions to move

7

Williams in a wheelchair was made in Wisconsin. Thus, all the physical acts relating to the movement of Williams occurred in Wisconsin. No Alaska Airlines' employee based in O'Hare (where the flight was scheduled to land), or otherwise in Illinois traveled to Milwaukee to assist Williams in Milwaukee. Similarly, no Alaska Airlines' employee at O'Hare, or at any other location in Illinois, participated in making any decisions regarding how to move Williams at Milwaukee. Consequently, defendants' motion to dismiss is granted because neither specific nor general jurisdiction can be established over the defendants in Illinois.

## CONCLUSION

For the reasons discussed above, defendants' motion to dismiss [ Doc 7 ] is granted. Because this dismissal is based on lack of personal jurisdiction over the defendants (including John Doe), it is without prejudice to plaintiff's filing in an appropriate jurisdiction.

**ENTER:** November 12, 2019

_____
**Robert W. Gettleman**
**United States District Judge**